May it please the Court, I am Robert Korn Revere for the Appellants. This appeal presents a pure question of First Amendment law. The question is whether the government can seize the proceeds of publishing before a judicial determination of guilt. We think the answer is clear. Don't we have a question, a factual question though, of whether these are proceeds of publishing? No, there's no factual question at all because the very premise of the government seizure is that the funds that they have seized were the proceeds of publishing that they consider to be illegal. And so that, the very premise of the seizure is based on But I think part of your argument is these are proceeds of publishing because they related to newspapers that we used to have before Backpage. Isn't that a factual question? No, that's part of it. But the central question is whether or not the funds in Appellants bank accounts that came from Backpage, which are the proceeds of publishing, can be seized. But then, even then, don't we need to know whether the government is right that the proceeds were from illegal activity publishing versus what you would consider to be valid publishing? But that's the ultimate question at trial. What they're doing is assuming their conclusion to then claim that they can do the seizure. Before we get to the First Amendment issue, I know that's the one you want to focus on, but I'm concerned. What's your best argument that we even have jurisdiction to hear this case? I think there are three bases for jurisdiction. The first is that the State decision below continued an injunction. And this Court, under various cases, including United States v. Rapinski, say that a pretrial order restraining assets is a preliminary injunction for the procedural purposes and, therefore, appealable as such. And by issuing the stay, the District Court decision below continued an injunction. Beyond that, we think that it's an appealable final order under Section 1291 because, essentially, the State decision leaves the Appellants out of court. But even if you're correct about the fact that the stay was improperly issued, the most that we do on this appeal would be to vacate the stay and send it back to the District Court. Correct? Well, to the extent the Court addresses the First Amendment issue, that's an issue that the Court looks at. But as Judge Friedland pointed out, that's largely fact-bound. Why, in the first instance, wouldn't we need a decision by the District Court on that? Even if we say we have jurisdiction, even if we say the stay was improvidently granted, that just sends you back to the District Court to deal with this. But the District Court decision implicitly decided the injunction that is based on a First Amendment claim. But I thought part of your argument was that the District Court didn't consider what it needed to consider. So why wouldn't we just send it back for the District Court to consider what you think they should have? Because the District Court implicitly decided the First Amendment issue when it said that it can't consider — Well, okay, so even if we assume that, why don't we send it back for better explanation? Because the ultimate legal question is something that's decided by the Court of Appeals de novo. And once the baseline First Amendment standard is established, there's no work for the District Court left to do. So I find this very confusing, because it seems like you started out this appeal trying to get it to go back to the District Court for further consideration. And somewhere along the way, if I understand correctly, you decided you didn't want it to go back to the District Court. No, our argument consistently throughout has been that the seizures were void from the beginning and that they should be vacated. That was the argument that we made in our motion to vacate the seizures. It was an argument that we made in opposing the stay. We've made this at about 11 different points in the record, and that was also — But it has not been resolved in the District Court, that motion. It has effectively been resolved by saying that — by the stay order having continued an injunction. Your resolution of that, or the appropriate relief for that, would be to vacate the stay and send it back to the District Court. But to the extent the reason it's being vacated is because the stay decision perpetuates a First Amendment harm, then, again, there's no work left for the District Court to do. What about the reason, though, that we can't tell whether it causes a First Amendment harm because there weren't enough fact findings and the District Court didn't explain its reasoning, isn't that a reason to vacate and remand without — I mean, if we think we don't know the facts to figure out whether what you're saying about the First Amendment is right or not, how can we reach the First Amendment issue? Because I think the very basis of the seizures in the first place presumed that these are the proceeds of publishing, and the — Well, only if they have the same — I mean, well, we don't know that, really. I guess the point is, how can we review what the District Court did with the seizure or the stay without having more explanation from the District Court? But the very premise of the seizures is that these are the proceeds of publishing, and the justification for the seizures — Well, the premise of the seizures was they were proceeds of illegal activity. Yes, but we're talking about prosecuting a publisher for publishing ads. And so don't we need to figure out what the particular proceeds came from and whether the ads were legal or not? But to get to that conclusion first, you have to assume the illegality. And here, what we're talking about is the conclusion that would be reached at trial. But how do you — how can we do that? It's just circular, isn't it? We're just kind of chasing our tails around a tree? Well, I think it's circular on the government's part, because they have asserted that they can claim that this is illegal publishing, and therefore, because they claim it's illegal publishing, they can do the seizure. That's their justification. But to reach that conclusion — Well, let's say you're a publisher and you're publishing pictures of naked young women. Clearly illegal. Clearly illegal. And you had evidence that the proceeds of those sales were in a bank account. I gather you're not disputing that the government would have the right to seize those, right? Not pretrial. And those are essentially the facts of Fort Wayne Books v. Indiana, where you have a predicate offense. The defendants in that case had had 39 obscenity convictions, and the government seized the bookstore and its assets, claiming that they could simply go on that past evidence and do the seizure. What we're saying here is that because they're seizing materials pretrial, and the whole purpose of the trial is to determine whether or not the activities were illegal, the publishing was illegal — Let me — again, I'm just trying to understand your perspective. Let's just say that you stipulated that the money in the account came from the activity that I described. Would they — even though it was pretrial, would they then have a legal right to seize those monies? No, because — No, you stipulated that it came from the sale of pictures of naked young women. I think you would not be able to do the seizure at that point, even with that stipulation. It seems to me your position is rather extreme. I get your position about if you don't know where it came from, that it gets kind of questionable. But if you know absolutely, and you know it's illegal, you cannot seize them pretrial under any circumstances. We're not saying that — we're not saying that we know it is illegal. What we're saying is that — No, my hypothetical, I'm saying. Not your case here, but my hypothetical. I gather you're saying that even though you agree, hypothetically, that this is the source, and these monies came from an illegal activity, you cannot seize them pretrial according to your perspective. Well, that's right. I mean, even if you assume in that hypothetical, and not in this case, that you are targeting material that is unprotected, that doesn't justify the government being able to take unconstitutional actions. For example, you wouldn't be able to do a prior restraint if someone stipulated that — A prior restraint's a little different than a forfeiture, is it not, in this city? Well, it may be technically, but as the Supreme Court — That has to do with whether you can publish in the first place. But as the Supreme Court explained in Citizens United, the violations of the First Amendment happen in various stages in the publication process. They can happen before publication, they can happen after publication, and they include all kinds of restrictions, including restrictions on finances. And it gives the example of Simon & Schuster as an example of that. Can you go back to your answer to Judge Smith's question, though, because I'm quite confused about this. So if there was a stipulation that these funds — in some hypothetical case, a stipulation that funds came from illegal activity where the illegal activity, say, was child pornography — so it's some kind of arguable speech, but it's child pornography, so it's not protected. It's illegal child pornography funds. You're saying even with that stipulation, those can't be seized? What I'm saying is that that doesn't justify the government engaging in unconstitutional acts. So what is the unconstitutional act if there was a seizure of those assets? A pretrial seizure, as in Fort Wayne Books or in Near vs. Minnesota. If you assumed that the publication there was somehow beyond the pale, you wouldn't then be able to use an unconstitutional action. The hypothetical that we're both talking about, the case law makes it very clear that child pornography is not protected by the First Amendment. So I'm not sure what you're talking about when you say this is an unconstitutional action. But again, that is the ultimate conclusion. But if it's stipulated — I mean, this is where we're chasing our tails. I don't understand what the unconstitutional action would be if it was stipulated that the funds came from unprotected speech. But the fact is, in this case, it is not stipulated. You're going back to this case now. I'm trying to understand the outer limits of your doctrine. And you seem to be saying that you just can't seize this stuff. It doesn't matter what the proof is. It doesn't matter that it's not constitutionally protected. Pretrial, you can't seize it. Well, what I'm saying is that you can't then justify unconstitutional methods of enforcement if you're starting with that premise of the — What are the unconstitutional methods of enforcement? Well, in this case, the pretrial seizure of assets. And there's really not a single First Amendment precedent that is consistent with what the government — this kind of seizure that the government has done. They can't point to a single case that — where there has been a pretrial seizure of this type. The cases involving seizures of finances have all consistently held that the First Amendment bars this kind of thing. The only — as a matter of fact, the government concedes that if you were seizing the assets, you wouldn't be able to do a pretrial, I presume, even with this hypothetical. They concede that if there's an ongoing business, you would not be able to do the pretrial seizure. The only exception they try to make is to say that it differs for the funds. Procedurally, in this appeal right now, are we only on appeal of the stay? It is an appeal of the stay, but the stay is effectively — So you were arguing — you brought an appeal to say they shouldn't have stayed this. They should have considered our objections. So fundamentally, what you're asking for is the district court to consider your objections. That's why you said there shouldn't have been a stay. So why shouldn't we give you what you wanted and let the district court consider your objections? Because this perpetuates the same kind of delay that the government has adopted from the beginning of this case. They have tried to kick this down the road so that no court ever has to consider the merits. But the criminal statute — I mean, this statute contemplates a criminal trial later on, does it not? It does, and that's the very — Why isn't that sufficient to provide a forum for you to vindicate your position? Because a post-trial or an in-trial resolution that is trying to remedy a pre-trial harm, which in this case is the pre-trial seizures, is by definition inadequate. If the harm is — What do you cite for that proposition? What case? Fort Wayne Books, Simon & Schuster. All of those cases talk about how the pre-trial seizure is constitutionally infirmed. And you can't litigate the pre-trial seizures in the criminal case, correct? By then it's too late. The issue of the legality of a pre-trial seizure has been decided by the time you get to trial. And so that's the distinction that this court drew in Adult Video Association versus Barr and Reno, talking about the difference between pre-trial remedies and post-trial remedies. I see that I have two minutes left. Do you want to save your time? You may do so if you wish. Do you want to save the rest of your time? I would like to save the rest of my time. Very well. Okay, we'll hear from the government. If you please the court, I'm Peter Kosinetz for the United States. With me is John Kucera, also from the United States. We apparently have two fundamental disagreements with the appellants here. One relates to jurisdiction. The other relates to this First Amendment rule that they are proposing. With respect to jurisdiction, all parties now agree that the stay order can be vacated. That is the only district court order that is up here on appeal. We have proposed... I was confused about whether you agreed to that, though, because you still argue in your brief that there's no jurisdiction. So if we don't have jurisdiction, how do we vacate the stay order? Well, the stay order... We would argue that you have jurisdiction to send the stay order back, to vacate the stay order. We all agree that the stay was prematurely granted. That's not the position you took in your papers that the court... If I understood it correctly, had no jurisdiction over this appeal, correct? We did. We also argued... So if we have no jurisdiction, then we would just dismiss the appeal. And if you went back to the district court, would you then say, oh, district court, you know, we said before you should stay it, but now we're agreeing all on our own that it shouldn't be stayed any longer. Is that going to be your position in the district court? Because you've asked for the stay, right? That's true, Your Honor. In fact, we filed a status report with the district court where we informed the court that we now believe the stay was improvidently granted and we would be willing to... You've already done that? Yes. Yes, Your Honor. We did. That said, on these jurisdictional issues, we still contend that there is no jurisdiction that... But this makes no sense. So, I mean, if you want us to send it back, we need to have jurisdiction. I had really big confusion about how the two sections of your brief fit together here. Well, we would contend that, you know, there may be sufficient jurisdiction to send it back. And we've agreed that... How does that work? Is that a mini-jurisdiction or something? So maybe... Sorry. Well, here's the follow-up question. The plaintiffs or defendants or your opponents argued that this is akin to an injunction. Once the stay is entered, this is akin to an injunction and cited Roth, Rapinski, Spilotro. I didn't really see a response to that. So do you have a response to why this isn't essentially an injunction that we have appellate jurisdiction over under 1292A1? I do, Your Honor. So those cases, Roth, Rapinski in particular, deal with criminal restraining orders. And under Ninth Circuit case law, the courts in those cases were required to follow the procedures of Rule 65 from the Rules of Civil Procedure to go through really an injunction proceeding that then resulted... And why isn't this totally equivalent to that? Because this is really a warrant based on probable cause, a seizure warrant. And a seizure warrant is not an immediately appealable injunction. If that were the case, then conceivably... Well, if the judge had denied your motion below instead of stated, that would have been appealable to this Court, correct? If the judge had... I'm sorry. If the judge had granted their motion or denied their motion to vacate the seizures, that is something the judge stated, didn't rule on it, correct? But if he had ruled on it and ruled against them, that is something that they could have appealed to this Court, correct? They wouldn't have had to wait till the end of the proceedings to do that. Conceivably, if it were a final order... Conceivably. Isn't there case law that says, yes, you can appeal a determination on the seizure of pretrial assets? Not in the civil forfeiture context that I'm aware of. But why would it be different? Because the procedures are different. Because in the criminal context, there are those injunction procedures that have to be followed. Whereas here, it's a probable cause determination made by a magistrate judge. And courts have recognized that those types of determinations aren't readily subject to being re-litigated. But why? I mean, it is like an injunction, right? They don't have the assets. They can't use them. There's essentially an injunction preventing them from using these assets. Why isn't that just like the criminal kind of injunction that prevents people from using assets? Well, they have other remedies that they can pursue. Like what? Which they have been pursuing, in fact. So, and some they have not. So, for instance, prominent in the opening brief, in the first paragraph, are statements to the effect of, these seizures are interfering with our ability to fund our legal defense. If that is really their claim, they can file a Monsanto motion. OK, let's put that aside. Let's just say they want to use these assets and they can't. And it's like an injunction stopping them. What other remedies do they have? They can also file a motion to dismiss the criminal case against them, which they, in fact, have done. They filed a- Good luck on that one. Well, that's proceeding apace. And oral argument has been set for August 19th on that issue. And they also have the right to determine all of this at trial. But that doesn't deal with the pretrial injunction. It's like a preliminary injunction, isn't it? Well, no, Your Honor, because of all the reasons that I just- And in any event, it's your position now that they should be able to go back to the district court and make all of these arguments, correct? Well, not all of these arguments. We've outlined in our motion for limited remand the parameters of our proposed remand, which would allow them to bring a Franks objection to see if they can make a substantial preliminary showing. What is it that they can't do, in your view, on your limited remand? What is it that they should not be able to do? Here's the dividing line. Under 18 U.S.C. 981G, the district court is authorized to stay proceedings in these civil forfeiture cases if discovery would occur that would risk interfering with the criminal case. Judge didn't really rely on that theory, though, in granting the stay. Am I correct about that? Yes, the judge didn't directly address that here. But for purposes of the kind of limited remand that we're proposing, that's really the dividing line. And the Supreme Court in Cayley, the 2014 Supreme Court case, really talks about the risks to the government of requiring proceedings that get into a lot of discovery about the criminal case when you're not in the criminal case. Tell me again, what happens on the remand that you're suggesting? What happens in the district court? So a substantial element of their motion to vacate the seizures was this claim that under Franks, the probable cause affidavit was flawed. And so they will be able to make that case. They would be required to make a substantial preliminary showing that there are grounds to believe that to be the case. And if they can do that, then they can get a hearing. And what else? Other than the Franks issue, what else can they do? Because in this appeal, the kind of the assets that are involved are really not very well defined. We would want fact-finding from the district court to more... So that would involve your giving discovery on this issue then, correct? Well, I don't think so, Your Honor, because it would involve just identifying all of the bank accounts, which we now know this is really just about bank accounts, in which these appellants claim interests, the nature of their interest in those bank accounts, and whether there is a nexus between those bank accounts. So you're saying that's information in their possession so you don't need discovery from the government? Right, that's right. Just to draw a clear line here, it sounds to me, in light of your responses to our questions, that you no longer contest our jurisdiction that under some basis, presumably the injunctive relief aspect of this, that you want to send it back for a limited remand. But if we can do it for that, we can send it back more openly for something else. Is that correct? Well, that is correct. I mean, obviously, if the court has, you know, an alternative proposal, that's... But bottom line is, our panel should no longer be concerned about jurisdictional issues, as far as you're concerned. Well, with respect to the review of the state order, because we all agree that the state... I'm wondering if we even have a case in controversy anymore here on appeal. It seems like both sides think... I mean, they seem to have switched their position, but originally they were saying the state shouldn't have been entered. And now you're saying also the state shouldn't have been entered. So I'm not sure we have a controversy anymore about whether the state should have been entered. And maybe if we didn't have jurisdiction, you're also telling us that even if we do nothing, you've already told the district court you want to have further proceedings before the state. Is that correct? We have. That is correct. So is there any reason we need to do anything on appeal? No. So we could just dismiss the appeal, and it would have the same effect as if we require more proceedings on the state? Because either way, there'd be proceedings on the state? That's correct. That's correct. If I could just, while I still have time, go back to the legal argument they were making. They seem to be claiming that under no circumstances can the government take steps to preserve monetary assets pre-trial. If there is any suggestion at all that the criminal activity involves some form of publishing, legal or illegal. That is not the law, and there is no support for that in any of the cases that they've cited. The Fort Wayne Books case just deals with the classic prior restraint, the removal of expressive materials from public circulation. It carves out this issue involving monetary seizures. The Barr decision applies Fort Wayne Books to the federal RICO statute, but emphatically states on page 792, twice, that this court, the Ninth Circuit, is upholding the RICO provisions that allow for the provisional pre-trial preservation of assets, of monetary type assets. That remains good law. There was a remand in that case, and the case was renamed Reno. But if you look at page 540 of that decision, they re-adopted all of this discussion from Barr. The only thing that they changed was a discussion involving the scope of post-trial forfeiture, which is not the issue here. The Simon & Schuster case is completely overread by the appellants. That was a case that acknowledged the constitutionality of generally applicable pre-trial restraint laws, like pre-judgment attachment procedures and post-trial forfeiture, but said that in that case, New York had enacted a specific law, kind of an add-on, called the Son of Sam Law, which targeted a specific form of speech for taxation. And the court said that wasn't right, and it was substantially overbrought because it applied to any kind of reminiscence about criminal activity. That case has nothing to do with this case, because here we're, again, operating under general procedures, 18 U.S.C. 981, not some sort of special law targeting any form of expression. And we're operating in a situation where there's not a vague allegation of criminal activity unsupported by even an arrest or a charge or anything, but we have four magistrate judges, neutral magistrate judges, and the grand jury, the federal grand jury in the District of Arizona, who have all found substantial probable cause to believe that these crimes have been committed. So we have very definite findings here. And even under their proposed standard requiring some sort of finding of guilt, we actually have that now. We have guilty pleas from Backpage, the company, four related corporate entities that together all operate at the Backpage Enterprise, and Backpage's CEO, Carl Ferrer. So not only do we have all of this probable cause, we also have guilty pleas as well. So from your perspective, there's really nothing to talk about. You think the law is completely clear. If we dismiss this case, it'll just go back to the district court, and the district court will apply the clearly applicable law that you say is without question, and you will get what you're looking for. Is that your position? More or less? More or less. I mean, obviously, the district court would have to operate within the confines of 18 U.S.C. 981. But you think the law is clear. There's really nothing for us to say. We do. Any other questions? Okay. Very well. Thank you very much. Thank you. So your opponent still has some time. So is there anything for us to do? I think there is, because this does present a fundamental First Amendment question, whether or not the government can do an ex parte seizure of publishers' assets simply by alleging that the publishing is illegal. That is the ultimate conclusion that they're trying to reach. But they're admitting now that they can't do that, that there needs to be further fact-finding on what these proceeds are. Well, no, they're only admitting that it should go back to review the Franks issue. No, they just said, in addition, they want to figure out what these assets are and where they came from. That goes to your point about whether they're publishing assets. But the very premise of the seizure is the idea that they are, the claim that they are all publishing assets. So we start from the same premise. And the question is whether or not they can simply justify the seizure based on the allegation. And if that's true... I think part of the problem is there's a different definition of publishing going on. I think you're saying publishing assets includes illegal or legal publishing. And they're saying we can try to figure out whether it's illegal or legal publishing. No, I'm saying what they have to determine at trial of whether or not the publishing was illegal. And the remedies... You take the position that no pre-trial seizure is possible or lawful. Is that correct? When they're prosecuting a publisher for publishing, that's right. Even if it's illegal publishing of child pornography. That's the point to be proven at trial, just as it was obscenity in Fort Wayne Books. But what about what he said before? And the reality is you've got the confessions, admissions, grand jury testimony, where people said, yeah, that's what we were doing. So if they have admitted that, doesn't that undermine, undercut your argument that this is totally a bogus pre-trial situation? It must go to jury first. No, Your Honor. Because none of that has been subjected to any kind of that adversary process. Those admissions, as we explained in our brief and in cases from this court, like United States v. Vera, are inherently unreliable. And again, those pleas have not even yet been accepted. We can test them. And that will be something that we deal with, both in pre-trial motions in the criminal case and ultimately a criminal trial. Let me ask, do either of my colleagues have additional questions? No. Thanks to you both, a very challenging, interesting area of the law. We thank you very much. The case just submitted, or just argued, is submitted. And the court stands in recess for the day. All rise. This court for this session stands adjourned.
judges: M. Smith, Friedland, Amon